### FRANK BARKMAN v. THE STATE.

#### No. 1653. Decided June 21, 1899.

**1. Presence of Accused at Impanelment of Grand Jury—Practice.**

In order to entitle an accused party, who is in jail and desires to be present at the impanelment of the grand jury, he or his counsel must make his wish known to the judge. If this has not been done, he can not be heard to attack the indictment because he was not present and accorded the right to challenge the grand jury.

**2. Private Prosecutors—Disclosing Names of.**

Where no reason or advantage on the one hand or of prejudice on the other is shown in a motion by accused to compel the State to disclose the names of the private prosecutors in the case it can not be held that he has the right to demand such disclosure.

**3. Objections to Admitted Evidence.**

Grounds of objection that admitted testimony is immaterial and irrelevant, will not be considered unless the testimony is inadmissible for any purpose. And general objections that it is "immaterial and irrelevant" are not sufficient.

**4. Murder—Testimony of Deceased on Inquest Over Another Party—Presence of Defendant—Motive.**

On a trial for murder, where the motive for the killing was that deceased had testified adversely to defendant at a previous inquest over the body of one whom defendant was charged with killing, the fact that deceased had so testified may

be proved, though defendant was not present when said testimony was given at the inquest, where it is shown that he had learned of deceased's testimony before he killed him. The evidence was admissible to prove defendant's motive, and the objection that defendant was "not present" is not a valid one.

### 5. Same—Evidence—Foreman of Grand Jury.

On a trial for murder, where the foreman of the grand jury which found the indictment was permitted to testify that the district attorney had requested him to ascertain from the witnesses who came before the grand jury the name of every person who was present when the killing occurred, Held, this would not constitute reversible error.

### 6. Same—Evidence—Clothing Worn by Deceased.

It is competent to admit in evidence, before the jury, the clothing worn by deceased at the time he was killed, where it has been identified and is in practically the same condition as at the killing.

### 7. Improper Argument.

No reversible error is shown on account of improper argument of counsel where the same was eliminated by the court and the jury instructed to disregard it.

### 8. Same—Reply to Argument of Defendant's Counsel.

Where the remarks and argument of the State's counsel in discussion of defendant's character are in reply to arguments and statements made by defendant's counsel, defendant has no ground to complain.

### 9. Continuance—Diligence.

An application for continuance is entirely wanting in diligence where it appears that the absent witnesses were enlisted United States volunteers who had been out of the State for some time prior to the meeting of the court, and no effort had been made to take their depositions.

### 10. Same.

It is not error to refuse an application for continuance for an absent witness, where it appears the witness was not present when the court docket was called and process not then asked for him.

### 11. Same.

A continuance will be held properly refused where it appears that the absent witness was not present at the conversation alluded to in the application, and where it was further shown that defendant's brother, who was present at the said time, was in attendance on the trial and was not placed as a witness on the stand.

### 12. Murder—Self-Defense—Charge.

On a trial for murder, where the court instructed the jury, "If, from the acts of (deceased), if any, or from his words, coupled with his acts, there was created in the mind of defendant a reasonable apprehension that defendant was in danger of losing his life or suffering serious bodily injury at the hands of (deceased), he would have the right to defend himself;" and further, "if it reasonably appeared to defendant from some act of (deceased), or from words spoken coupled with his acts * * * that it was the purpose of deceased to take the life of defendant or do him serious bodily injury, to acquit; Held, the charge does authorize the jury to consider the acts of deceased disconnected from any words he may have used. HENDERSON, Judge, dissenting.

APPEAL from the District Court of Camp, on change of venue from the County of Bowie. Tried below before Hon. J. M. TALBOT.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of O. D. Perry by shooting him with a pistol, in Bowie County, on the 29th day of July, 1897.

The important facts leading up to and attendant upon the killing,

as shown by the record, may be briefly stated thus: In the month of May, 1897, and some month or a month and a half prior to the killing of O. D. Perry, this defendant, Frank Barkman, had killed one S. P. Damon. At the inquest which was held on the dead body of Damon, O. D. Perry was a witness and testified to matters tending to show that Barkman had murdered Damon. Barkman was not present at the inquest proceedings, but Perry's testimony given at the inquest was published in a newspaper at Texarkana, and it was proved that Barkman had purchased the paper, had read said testimony, became very indignant thereat, and indulged in serious threats against Perry. After he was indicted for the murder of Damon, he stated in effect, to some of the witnesses who testified at this trial, that Perry was the only witness he feared in the Damon case; that Perry should never testify in that case; that he intended to kill him before that trial, and in case he was unable to kill him before the trial, he would kill him (Perry) upon the witness stand in the courthouse when he took the stand to testify in that case.

On the afternoon, between 4 and 5 o'clock, of the day of the homicide, Perry had gone into the 16 to 1 Saloon in Texarkana, and called for a drink, and was standing at the bar stirring the liquor in his glass, with his back to the door entering from the street into the saloon, when defendant stepped up behind him, tapped him on the shoulder, and as he called his name immediately opened fire upon him, and shot him two or three times before he fell to the floor; and then placing his pistol to his head, fired his last shot through his brains. Perry died immediately, and defendant, waving his pistol over his own head, exultantly and defiantly proclaimed that he had killed him.

The questions discussed in the opinion below, on this appeal, need no further statement to illustrate them.

*John J. King, Todd & Glass,* and *Zachery & Heath,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at ten years confinement in the penitentiary.

Appellant attacked the indictment on the ground that he was not present when the grand jury was impaneled. This matter was investigated by the court, and it was shown, in substance, that he was in jail in Red River County when the grand jury presenting the indictment was impaneled. He made a request of some of the officers to carry him to Bowie County, and also for his brother to have him conveyed to that county by the opening of the term of the District Court. No request was made to the district judge, the only party who had authority in the premises. The law provides that the

accused may be present when the grand jury is impaneled, to the end that he may challenge the array or any member of the panel. But where he is confined in jail, and desires to be present, he or his counsel must make that wish known to the district judge. This was not done, and for that reason there is no merit in this contention. He also made a motion to compel the State to disclose the names of parties whom he alleges agreed to pay money for the employment of private counsel to prosecute him. The same question was presented in cause No. 1658 (Barkman v. State [decided at the present term], 52 Southwestern Reporter, 69), and for the reasons assigned in that opinion this motion is held not well taken. C. A. Hooks was introduced in behalf of the State, and, after stating he was justice of the peace and held the inquest over the body of one S. P. Damon, he stated that defendant was not present, and that Perry, the deceased in this case, testified as a witness before him on that inquest. Hooks was then permitted to narrate before the jury the testimony of Perry given at the inquest over the body of Damon. This evidence was permitted to go to the jury on the question of motive, Perry being the only witness who testified at said inquest in regard to the killing of Damon. Objections were reserved by appellant to this testimony on the grounds (1) that it was immaterial, (2) that it was irrelevant, and (3) that he was "not present." Grounds of objection that admitted testimony is immaterial and irrelevant will not be considered by this court, unless the testimony is inadmissible for any purpose. If admissible for any purpose, such general objections will not be sufficient. That defendant was not in fact present at the inquest presents perhaps an objection for consideration. The fact that Perry's statement was made under oath is not more binding than if not made under oath. Usually this character of testimony is hearsay. It is always permissible, where that question is at issue, to prove motive, and in this case we are of opinion the State had the right to show that Perry was an adverse witness to appellant at the inquest, and it would be immaterial as to how defendant gained this information. If in fact he was aware of the adverse testimony of the deceased Perry, it would be permissible to prove that Perry was such adverse witness. The more important question is whether or not appellant was aware of the fact that Perry had testified adversely to him on said inquest, the question at issue being motive. The bill itself fails to show that appellant was ignorant of the testimony of Perry. In order to make this bill complete and subject for revision, it should have shown that defendant was not apprised of said testimony. The theory of the prosecution was that appellant killed Perry because of the fact that he had testified adversely to him at the inquest held over the body of Damon, whom appellant was charged with killing. The court states that the testimony objected to was introduced alone on the question of motive, and it was shown on this trial that appellant was aware of such testimony, and on account thereof made

threats against the life of Perry. Therefore the objection that "he was not present" is not a valid one. Tisdale, who was foreman of the grand jury presenting this bill, testified for the State that he heard Armsworthy and Hickerson testify before the grand jury, and that neither of them stated that the witness Bill Mathis was in the 16 to 1 Saloon when defendant shot and killed deceased. State's counsel asked if he had been requested to pay particular attention to the witnesses in regard to whom they would swear were present at the killing of deceased. In reply he stated that the district attorney requested him to find out from the witnesses before the grand jury the name of every person who was present when the killing occurred. To this request defendant objected, on the ground that it was hearsay. This bill is very indefinite; but, if it was intended to impeach these two witnesses in this manner, the ruling of the court was erroneous. Hyden v. State, 31 Texas Crim. Rep., 401. But it will be observed that this objection was not interposed to the testimony that these parties failed to state in the grand jury room that Mathis was present at the time of the shooting. The objection urged was to the statement that the district attorney requested him to ascertain from the witnesses who came before the grand jury the name of every person who was present when the killing occurred. As presented, we do not believe this bill shows such error as requires a reversal of this judgment. The clothing worn by deceased at the time of the homicide was introduced in evidence over appellant's objection. This clothing was sufficiently identified to show it was the identical clothing worn by deceased when appellant shot him, and in practically the same condition. There was no error in admitting this testimony. Hart v. State, 15 Texas Crim. App., 202; Levy v. State, 28 Texas Crim. App., 203; Jackson v. State, 28 Texas Crim. App., 370.

We do not believe there is any error in the sixth bill of exceptions reserved to the argument of one of State's counsel. If the argument was improper at all, it was eliminated by the court, who instructed the jury to disregard it. It may be further noted that the bill shows said remarks were in reply to arguments and statements of defendant's counsel in which they discussed the character of defendant at length.

Appellant made an application for continuance. The diligence as to John and Henry Herron is entirely insufficient. The parties were out of the State, and had been for some time prior to the meeting of the court. It seems they had enlisted in some regiment of United States volunteers. No interrogatories had been applied for or filed. While the witness Morris was not beyond the State, so far as the record shows, when the court docket was called on the 23d of May, he not being present, process was not asked for him. As to the witness Houston, the State's testimony shows that he was not present, and did not hear the conversation between appellant and Hardin

alluded to by appellant in his application. It does show that Joe Barkman, appellant's brother, came up about the time the conversation between defendant and Hardin terminated. Joe Barkman was present at the trial, but was not placed upon the stand as a witness. If the conversation occurred, Joe Barkman could have testified to that portion of it he may have heard, and he certainly could have testified to the fact that Houston was present, if true. We do not believe there was any error in overruling the motion for continuance.

The criticism of the seventeenth paragraph of the court's charge we think is hypercritical. It is evident from reading the charge that the court was not limiting the consideration of adequate cause to the relative size and strength of the parties; nor was it a charge on the weight of the testimony. How this could have injured appellant we do not understand. Criticism is also made of the charge because the jury were informed that they could consider the acts of the deceased coupled with his words, but did not inform them that they had a right to consider his acts alone; and the effect of this charge was to exclude a consideration of his acts, unless coupled with his words. We do not believe the charge justifies this criticism. That portion of it reads as follows: "Now, if from the acts of the said O. D. Perry, if any, or from his words coupled with his acts, if any, there was created in the mind of the defendant a reasonable apprehension that defendant was in danger of losing his life or suffering serious bodily injury at the hands of said Perry, he would have the right to defend himself. * * * If you further believe from the evidence that, at the time or just before he did so, it reasonably appeared to him [defendant] from some act of said O. D. Perry, or from some words spoken coupled with his acts, if any, in the light of all the facts and circumstances known to and surrounding him at the time, viewed from the defendant's standpoint, that it was then the purpose of the said O. D. Perry to take the life of him [defendant], or do him some serious bodily injury," etc., then acquit. We believe this charge does authorize the jury to consider the acts of Perry disconnected from any words he may have used. We have examined the court's charge in the light of the testimony and the criticisms urged against it, and do not believe any of them are justified. Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

HENDERSON, Judge (Dissenting).—After a careful examination of the record, I can not agree to the disposition of this case as made by a majority of the court. I believe the motion for continuance should have been granted. This was the first application for continuance, and was predicated on the absence of John and Henry Herron; Margaret Foster, resident of Bowie County; R. E. Houston, a resident of Gregg County; and Harry Morris, a resident of Bexar County. The opinion of the court states that the diligence as to John and

Henry Herron was entirely insufficient; that the witness Morris was beyond the State when the case was called on the 23d of May, and no process was asked for him. As to the witness Houston, that the State's testimony showed he was not present, and did not hear the conversation between appellant and Hardin alluded to by appellant in his application. The court's explanation to this bill is to the effect that the testimony of Morris was merely cumulative; that the witnesses John and Henry Herron had gone beyond the jurisdiction of the court, and that fact was known to the defendant's counsel before the court met, which was on the 23d day of May, 1898,—the case being set for trial on the 31st of May,—and no effort was made to take the depositions of said John and Henry Herron, and when the docket was called for orders on May 23d no additional process was asked for the witness Henry Morris; and that the witness W. C. Hardin testified that the witness Houston was not present, and did not hear the conversation between himself and defendant related by him on the witness stand; and, further, testified that, just as said conversation closed, Joe Barkman came up to where he and defendant had said conversation, and Joe Barkman was present during the trial of defendant, and was not put upon the witness stand and asked to state whether or not Houston was present at or near the place where this conversation occurred. It would appear that both the trial court and the majority of this court concede the materiality of the absent testimony, but justify the action of the lower court in overruling the motion for continuance solely on the ground of a want of diligence on the part of defendant. I do not deem it necessary here to invoke the rule applicable to motions for new trial based on overruling motions for continuance,—that is, that a new rule applies; and although diligence may not have been used, yet, if the testimony appears to be material and probably true, that a new trial prevails, because I believe that the record here shows diligence on the part of appellant to obtain at least some of said testimony.

Appellant shows that the case had been previously tried; that the two Herrons were under subpœna and had attended and testified on said trial; that said witnesses remained in Bowie County, and were in business until a very short time ago; that about the 15th of May, 1898, they joined an Arkansas regiment, and were at Little Rock a short time, and from there they were removed to Mobile, Ala., or to Chickamauga, Tenn., defendant not being certain which point; and that he has not been able to locate said witnesses and get their depositions. I think as to these witnesses the diligence was reasonable. The fact that they were beyond the jurisdiction of the court, and defendant's counsel knew this before the 23d of May, 1898, as certified by the court, may be true; but it is shown that, while they were absent from the State, they were in the army, and on the move, and appellant had only from the 15th of May, at most, until the 31st to locate them and take their depositions. The witnesses being in the army,

and under marching orders, appellant could scarcely anticipate where they would be at any given time; and I believe his failure to get their depositions was justified by the excuse given.

As to the witness Houston, who was served, the return and the physician's certificate accompanying it showed that he was sick and unable to attend court. And the fact that the State's witness Hardin testified that Houston was not present and did not hear the conversation between himself and defendant related by him on the witness stand, it does not occur to me, was a ground for overruling the continuance. If so, a motion for continuance can always be defeated by testimony of a State's witness contradicting what an application for continuance shows a defendant's witness would prove. Nor should it defeat this application that Joe Barkman, whom the court certifies came up to where said Hardin and defendant had said conversation just as it closed, and that Joe Barkman was present during the trial of defendant, and was not put on the witness stand and asked to state whether or not Houston was present at and near the place where said conversation occurred. The important matter here to be proved by the absent witness was that the conversation between Hardin and defendant, as testified to by Hardin on behalf of the State, did not occur. The application shows that the witness Houston was present at the time when said conversation is alleged to have occurred between Hardin and defendant; and that defendant did not use the language in regard to deceased imputed to him by said Hardin. Now, the fact that Hardin testified that Barkman came up just "at the close of said conversation," as certified by the court, and was present during the trial, and was not put on the stand and asked to state whether or not Houston was present at or near the place where this conversation occurred, is no answer to this proposition. It will be observed that the court makes the integrity of appellant's application for continuance hinge entirely on the testimony of Hardin, the very witness defendant proposed to contradict by his absent witness. If a continuance can be disposed of in this manner, then all that is necessary is for the court to show that some State's witness contradicted the testimony proposed to be proved by defendant's absent witness, and so defeat an application for continuance.

As to the witness Morris, I do not believe the diligence was sufficient. Process should have been issued to Bexar County for him sooner.

Appellant excepted to the action of the court in regard to the testimony of C. A. Hooks, and, in order to fully present this matter, I will here insert the bill of exceptions raising this question: "Be it remembered, that upon a trial for this cause the State introduced C. A. Hooks as a witness, who testified that he was a justice of the peace at Texarkana, Bowie County, Texas, on May 18 and 19, 1897, and as such held the inquest over the body of one S. P. Damon; that defendant was not present; that O. D. Perry testified as a witness before him. The State's counsel then asked the witness what O. D.

Perry testified to, to which question defendant, by counsel, objected, upon the ground that defendant was not present, and that the same was immaterial and irrelevant. The court overruled defendant's objection, to which ruling of the court counsel for defendant then and there excepted; and said witness testified as follows: 'Damon was killed on the night of May 18, 1897, and I held the inquest on the 19th.' O. D. Perry testified as follows: That he was in the saloon at the time the killing occurred, and Frank Barkman was drinking. He said that he saw that negro Ed Parker, and there seemed to be some trouble between him and Damon, and that Barkman made some remark about it, and the negro persisted in doing something to him. He said that the negro had hold of the lapel of his coat, and Perry made some remark about it; and Frank Barkman made the remark to Perry, and said, 'God damn him, he would kill anybody that would do so and so to him,' and drew his pistol about that time, or probably had it in his hand, and raised it like he was in the act of striking at Damon, and the pistol fired, and it killed Damon. He was shot behind the ear. Perry also testified that he asked defendant why he let a negro do a white man that way, and defendant said, 'I told him to,' and that the defendant raised his pistol, and the pistol went off. Defendant here tenders this, his bill of exceptions, and asks to have the same approved and filed as a part of the record in this case. The testimony of the witness C. A. Hooks further showed that the testimony of O. D. Perry, taken at the inquest over the killing of Damon, was not reduced to writing and signed by the said Perry. The theory of the State was that the defendant had killed Perry because Perry was a material witness against him (defendant) in the case for the killing of Damon, and wanted to get him out of the way. The testimony of the witness Hooks, objected to as above set out, was permitted to go to the jury, to be considered by them solely for the purpose of aiding them in determining the motive of defendant in killing the said Perry. With this explanation, the above bill is approved and ordered filed." Of course in the trial of appellant for killing Perry it was competent for the State to introduce testimony showing motive for such killing; and I do not controvert the proposition that it was competent to show in this case, as a motive for appellant's killing Perry, that Perry was a witness against him in another criminal case, provided that appellant had knowledge that Perry was a witness against him. Kunde v. State, 22 Texas Crim. App., 65; Hudson v. State, 28 Texas Crim. App., 323. That is not the question here; but I insist that this matter is to be settled by the bill of exceptions itself, and it shows, as presented, that the testimony was not admissible. Observe that the State undertook to prove by Hooks, the justice of the peace who held the inquest over the body of Damon, what the deceased, Perry, who was a witness at that inquest proceeding, testified in regard to his being killed by

41st Crim. Rep.—8

defendant. It was shown in this connection that defendant was not present; and the testimony was objected to upon the ground that defendant was not present, and that the same was immaterial and irrelevant. The court explains his admission of the details of said testimony before the justice, in the absence of defendant, by stating: "That the theory of the State was that defendant had killed Perry because Perry was a material witness against him [defendant] in the case for the killing of Damon, and wanted to get him out of the way, and that the testimony of Hooks was permitted to go to the jury to show motive by appellant in killing Perry." Nowhere does the court explain or qualify the bill by stating that, although appellant was not present present at the inquest trial, knowledge that appellant was a witness on that trial was brought home to him. I understand that a bill of exceptions should assert the very ground of objection relied on and which strikes at the inadmissibility of the offered testimony. Here testimony taken on an inquest proceeding was offered against defendant. Obviously the objection here to be made was that the same was irrelevant because appellant was not present at said inquest, and was therefore not charged with notice of said proceeding. Now, if same was admissible upon some other ground, depending upon some extraneous fact, it seems to me that this should come from the party offering the testimony. As to the defendant it was hearsay; but the State could reply, true, he was not present, but that it proposed to make it admissible by other testimony showing that appellant knew of Perry's testimony before said magistrate. Under the authorities, the bill showed all that was necessary to exclude the testimony; and in the absence of some explanation in the bill itself by the court, showing that it was admitted on proof of some other fact that rendered it admissible, in my opinion it was not competent testimony. The bill on its face shows all that was necessary to exclude it; that is, as to appellant (he not being present), hearsay and irrelevant. I notice that, in the opinion of the majority of the court, reference is made to the statement of facts to show that other proof was introduced showing that appellant must have had knowledge that deceased Perry was a witness against him in said case. But I do not understand that, under the authorities, we can appeal to the statement of facts to settle this question, but must be governed by the bill of exceptions itself. I would further remark that I do not here discuss the details of the testimony of Perry in regard to the killing of Damon, as I do not understand the testimony to be objected to on that account. As stated before, the fact that Perry was a witness against defendant in that case could be proved, if appellant had knowledge that he was such witness. But how far the details of his testimony could be gone into originally is a very important question. The State introduced one Tisdale, and he testified that he heard the witnesses Armsworthy and Hickerson testify before the grand jury, and that neither of them testified that Bill Mathis was in the saloon at the time defendant shot

and killed Perry. The State's counsel then asked witness if anyone had requested him to pay particular attention who the witnesses Armsworthy and Hickerson swore were present at the killing of Perry, and, if so, who it was that so requested him. Appellant objected to the witness stating that he was cautioned by anyone to remember who said witnesses, while in the grand jury, swore were present at the time of the killing, on the ground that the same was hearsay and irrelevant. The court overruled the objection, and the witness stated that R. D. Hart, the district attorney, cautioned him in regard to said matter. Now, if it had been shown that Armsworthy and Hickerson had been asked, while in the grand jury room, to state whether or not Mathis was present, and they had answered that he was not; or if the bill had shown that the general question had been propounded to said witnesses Armsworthy and Hickerson to state to the grand jury all persons who were present in the saloon at the time of the homicide, and they had stated the names of all who were present, and had not included Mathis,—then it might have been competent for the State to have shown in that connection by the witness Tisdale that he was sure that they stated Mathis was not present, because he had been cautioned by the district attorney to watch said witnesses as to that matter. But here we have the witness Tisdale merely stating that he was sure that Armsworthy and Hickerson did not state in the grand jury room that Mathis was present at the shooting. The fact that he did not state it, as here presented, does not signify anything. It does not show definitely that they made any statement at all on the subject, or 'that they were even asked about it. So that the caution given him by the district attorney in regard to said matter was irrelevant so far as shown by this bill. Because of the erroneous rulings of the trial judge pointed out, which I regard as involving material matters, I believe the judgment should be reversed, and the cause remanded.