**DENNY v. STATE.**
No. 25768.

Court of Criminal Appeals of Texas.
April 2, 1952.

On Motion to Suspend Further Pro-
ceedings April 30, 1952.

L. F. Sanders, Canton, for appellant.

Joe Tunnell, Criminal Dist. Atty., Can-
ton, George P. Blackburn, State's Atty., of
Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a conviction for mur-
der with a life sentence in the penitentiary.

The statement of facts in the case suffi-
ciently supports the jury's verdict. The only
defense offered was insanity. This issue
was thoroughly gone into and evidence pro-
duced from a number of witnesses, relatives
and neighbors, who knew appellant and de-
scribed the condition upon which they based
a conclusion as to his mental incapacity.
Several physicians examined him and testi-
fied in behalf of appellant. It is not neces-
sary to discuss their evidence in full. The
issue on the subject was clearly drawn and

the jury found in favor of the state's con-
tention. In doing so their verdict has elim-
inated every complaint in the record which
may be based upon the proposition that he
was mentally incapacitated to look after his
defense.

The statement of facts before us is in
question and answer form. This is so vol-
uminous as to preclude the possibility that
this court could read the same and give con-
sideration to every objection and exception
taken in the course of the trial. Such con-
ditions must have been anticipated by the
legislature which provided, in authorizing
the statement of facts to be in question and
answer form, that in order to preserve the
exceptions an index must be made as a
part of the statement of facts calling atten-
tion to each exception on which the appel-
lant expects to rely. No such index is
found in the statement of facts in this case
and, as a consequence, the bills of exception
taken in that manner are not before us for
consideration.

We will, nevertheless, discuss some of the
questions which are probably raised by the
motion for new trial.

The offense of murder is alleged to have
been committed on June 12, 1951. Appel-
lant was immediately placed in jail and
has been there continuously to the date of
the appeal. On June 19th, seven days after
the homicide, the grand jury was convened
and it appears that one of the number, who
acted as foreman, had not paid his poll
tax and was subject to the payment of poll
tax as a qualification for voting in Van
Zandt County. It is agreed that more than
a thousand men are qualified voters and
qualified to serve on the grand jury in Van
Zandt County.

It is shown that appellant had no visitors
in jail and he had had no information that
the grand jury was being impaneled. He
did not employ an attorney until June 26th,
seven days after the return of the indict-
ment. Based on these facts a motion was
filed, when the case was called for trial, to
quash the indictment alleging the disquali-
fication of the foreman of the grand jury
and his presence while the indictment was
being discussed and voted upon.

Under Article 339, Vernon's Ann. Code of Criminal Procedure, the foreman was not a qualified juror and should have been excused had timely objection been made. The question then presents itself, did appellant waive his right to challenge the grand juror? That he had no attorney until June 26th was a matter of his own choosing for which neither the court nor the state was responsible. He cannot be heard to say that he did not know his legal rights. It is presented in argument under these facts that he had no way of knowing that the grand jury was going to be impaneled. If he had inquired of somebody who had the responsibility of giving the information and had been misled a different question may have arisen. There is no showing in this record that he made any effort to find out what was happening in regard to his case.

Article 358, Vernon's Ann. Code of Criminal Procedure, reads as follows: "Before the grand jury has been impaneled, any person may challenge the array of jurors or any person presented as a grand juror. In no other way shall objections to the qualifications and legality of the grand jury be heard. Any person confined in jail in the county shall upon his request be brought into court to make such challenge."

In Brown v. State, 32 Tex.Cr.R. 119, 22 S.W. 596, 601, it was said:

"Defendant's motion to set aside and quash the indictment because he was not allowed an opportunity for challenging the array of jurors constituting the grand jury was not well taken. He made no request to be brought from jail for that purpose. This was necessary."

Again, in Barkman v. State, 41 Tex.Cr.R. 105, 52 S.W. 73, this court said:

"The law provides that the accused may be present when the grand jury is impaneled, to the end that he may challenge the array or any member of the panel. But where he is confined in jail, and desires to be present, he or his counsel must make that wish known to the district judge. This was not done, and for that reason there is no merit in this contention."

This seems to have been the holding continuously, as stated in Walker v. State, 98 Tex.Cr.R. 663, 267 S.W. 988, at page 990:

"Appellant fails to bring himself within any exception which would permit an attack upon the action of the grand jury through a motion to quash the indictment. His effort to excuse himself from failing to present a challenge to the array of grand jurors does not meet the requirement that if in jail an accused must make request that he be brought into court for that purpose."

The legislature took into consideration the fact that the accused would be confined in jail at times and made provision for giving him the privilege of being brought into the court room to make a challenge for cause against a grand juror, but it does not impose upon the court or the prosecuting attorney any obligation to carry him the information and advise him of his rights. It is a commendable practice of a great many district judges to inform such unfortunate persons of their rights but the legislature having failed to impose any such duty on the trial judge, the clerk, the sheriff, or the prosecuting attorney, we are without authority to do so. The complaint cannot be sustained.

Another question much insisted upon complains that the evidence taken on the examining trial was sealed up and placed with the district clerk and that appellant and his attorney were denied the privilege of seeing this evidence until the trial had started.

It would appear that a record of this kind is a public record because it has been taken at a trial that is public. In that view we see no logic in refusing permission to appellant, or anyone interested in the case, the privilege of seeing the record. Our logic, however, is confronted with a statutory provision which seems to have been complied with to the letter in this case. We refer to Articles 296 and 297, Vernon's Ann. C.C.P. See also 12 Tex.Jur. p. 606 and 607.

The third ground of complaint upon which we are asked to reverse the case is the failure of the court to grant a continuance to a subsequent term of court. We

have examined the record carefully and it appears that the court was quite indulgent. The witnesses most important as described by the motion for continuance were brought into court and testified. The position is then taken that, under the circumstances, they were not able to give the forceful evidence which they would have given had they been physically able to attend court.

The lady witnesses, a sister, a sister-in-law and an aunt of appellant, were examined and in the opinion of the writer were unusually well prepared to testify. They were of extraordinary intelligence and withstood grueling examinations without any break or default in the positions taken. Their testimony in the case cannot be relied upon to substantiate the contention presented in the motion.

A motion was made to quash the venire of 100 jurors on the ground that the jurors had not been regularly summoned. It is shown that the District Attorney volunteered his services to aid the deputy sheriff in addressing notices to the jurors on the list furnished by the district clerk. The district attorney had a list of his own and used the same to address the notices. Another deputy sheriff assisted him in checking the addresses with the list. This was finished late in the afternoon and, finding no member of the sheriff's force in the office, the district attorney deposited the notices in the mail. Each notice was given in the name of the sheriff.

Admittedly this procedure is not regular and is the most difficult question presented in this appeal, but we fail to find any harm done to appellant in that it is not shown that any of the veniremen failed to appear and attend court. It is not shown that appellant exhausted his peremptory challenges and that he was, thereby, forced to take an objectionable juror. In this state of the record, this court has discussed the question now before us and held adversely to appellant's contention in Matthews v. State, Tex.Cr.App., 239 S.W.2d 817. In that opinion many authorities were cited.

The transcript in this case is unnecessarily long. It contains subpoenas, applications for subpoenas, and many other instruments not required or appropriate to be placed in a transcript. We have examined this mass of records in a sincere effort to understand all of it, and believe that we have succeeded. We find no reversible error and the judgment of the trial court is affirmed.

GRAVES, Presiding Judge.

After the affirmance of this cause by this court and while the case was pending on motion for rehearing, upon a trial in the court in which he was convicted, appellant was adjudged to be insane, and was committed to a state hospital.

The motion to suspend further proceedings is granted and the clerk of this court is directed to retire this case from the docket until it shall be properly shown to this court that appellant has been restored to sanity. See Nugent v. State, Tex.Cr. App., 230 S.W.2d 223, and authorities there cited.